ROTHENBERG, J.
(dissenting).
The trial court concluded that section 48-26 of the City of Aventura’s Code of Ordinances, the photo enforcement red light violation ordinance, is preempted by and in conflict with Florida law, and is, therefore, invalid. Because I agree with the trial court, I respectfully dissent from the majority opinion concluding otherwise.
Due to the inconsistency of penalties imposed by the municipal courts and the inconsistency of traffic laws in munieipalities around the state, article V, section 20(d)(4) of the Florida Constitution was enacted to abolish all of the municipal courts, and the Florida Legislature created chapter 316 to provide a uniform statewide traffic control system. Prior to the adoption of article V, there were sixteen different courts in Florida, which the chairman of the House Judiciary Committee characterized as “a hodgepodge of different courts which vary from county to county.” Amends, to the Fla. R. of Appellate Procedure, 696 So.2d 1103, 1111 n. 9 (Fla.1996) (Anstead, J., specially concurring). The chairman further explained that the passage of article V would consolidate the sixteen different courts into “four uniform levels of courts: supreme court, district court of appeal, circuit court and county court.”
Article V, section 1 was enacted to vest the judicial power “in a supreme court, district courts of appeal, circuit courts and county courts.” Further, article V, section 1, specifies that “[n]o other courts may be established by the state, any political subdivision or municipality.” (emphasis added).
Chapter 316, Florida’s Uniform Traffic Control Law, took effect on “January 1, 1972 throughout the state and in all municipalities of the state.” Ch. 71-135, § 6, at 552, Laws of Fla. The Legislature’s intent in adopting the Florida Uniform Traffic Control Law was “to make uniform traffic laws to apply throughout the state and its *242 several counties and uniform traffic ordinances to apply in all municipalities.” § 316.002, Fla. Stat. (2008).
Section 316.002 also makes it “unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter.” Additionally, section 316.007, Florida Statutes (2008), specifically provides:
The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized ....
Despite the proscriptions of sections 316.002 and 316.007, the City of Aventura (“the City”) enacted section 48-26 to enforce and punish red light violations, a matter already covered by chapter 316, without express authorization by the Legislature, and in a manner that is in direct conflict with chapter 316 and Florida jurisprudence. Further, when a violation is contested, a quasi-judicial adjudication on the merits is made by a procedure established by the City, in violation of article V of the Florida Constitution and chapters 316 and 318, Florida Statutes (2008).
THE CITY’S HOME RULE POWER
The City, as a Florida municipality, indisputably is granted broad home rule and police powers. Article VIII, section 2(b) of the Florida Constitution provides: “Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law .... ” (emphasis added). That power, however, is not without limitation. A municipality may not enact legislation concerning a subject expressly preempted by state or county law or Florida’s Constitution, or which is in conflict or inconsistent with general law. For example, section 166.021(3)(c), Florida Statutes (2008), states:
The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
(c) Any subject expressly preempted to the state or county government by the constitution or by general law[.]
The issue in this appeal is, therefore, whether section 48-26, the City’s unmanned photo enforcement red light ordinance, is expressly preempted by or is in conflict with Florida law. It is both.
THE CITY’S ORDINANCE IS EXPRESSLY PREEMPTED BY STATE LAW
Contrary to the majority’s finding that “Neither the language in section 316.002 nor section 316.007 demonstrates express preemption by the state,” the Florida Legislature has expressly preempted to the state the area of traffic control and enforcement except in certain limited circumstances. Section 316.002 of the Florida Uniform Traffic Control Law specifies:
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities.... It is unlawful for any local authority to pass or to attempt to enforce any ordinance in *243 conflict with the provisions of this chapter.
(Emphasis added).
In recognition of its stated purpose, section 316.007 of the Florida Uniform Traffic Control Law provides: “The provisions of this chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.... ” (Emphasis added). Thus, pursuant to its stated purpose of providing for uniform traffic control and enforcement of traffic laws throughout the state, the Legislature expressly preempted the enactment and enforcement of any ordinance on a matter covered by chapter 316 unless expressly authorized, and further limited local governmental home rule and police powers by precluding enforcement of any local ordinance that conflicts with the provisions of chapter 316.
Sections 316.002 and 316.008 identify precisely under what conditions chapter 316 expressly authorizes municipalities to regulate and control traffic within their jurisdictions. Section 316.002 provides, in part:
The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter.
(Emphasis added).
The City and the majority rely on subsection (l)(w) of section 316.008 in arguing that chapter 316 expressly grants the City the authority to enact an ordinance to enforce and punish violations of section 316.075, Florida Statutes (2008). Florida’s traffic light statute, subsection (l)(w), provides:
(1) The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
(w) Regulating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties and providing for the construction and maintenance of such streets and highways.
§ 316.008(l)(w), Fla. Stat. (2008).
The City and the majority’s reliance on section 316.008(l)(w) as the statute’s express grant of authority is, however, misplaced. The City’s unmanned cameras placed at various intersections do not regulate nor restrict traffic, and Masone does not allege that the use of cameras to monitor traffic is preempted by or in conflict with Florida law. What Masone correctly argues is that section 316.008(l)(w) does not expressly grant municipalities the authority to: (1) enforce by ordinance, violations of traffic infractions, including red light violations, already being enforced under Florida’s uniform traffic laws; (2) punish alleged violators on an adjudication on the merits in a “court” unauthorized by the Florida Constitution or state statute; (3) create a different standard of proof and liability for red light violations than that which has been approved by the Legislature; and (4) establish penalties not authorized by chapters 316 or 318.
*244 As will be addressed in greater detail in the following section titled “THE CITY’S ORDINANCE CONFLICTS WITH STATE LAW,” section 316.008(l)(w) does not grant municipalities the authority to enforce the state’s uniform traffic laws by a totally separate, very different, unapproved method, and the method of enforcement established by the City is in direct conflict with Florida law.
Additionally, section 316.008(l)(w) must be read in pari materia with sections 316.002, 316.075, and 318.18, Florida Statutes (2008). Section 316.002 specifies the legislative intent for uniform statewide traffic laws. Section 316.007 prohibits municipalities from enacting or enforcing any ordinance on any matter covered by chapter 316. Section 316.075(4) provides that a violation of section 316.075, the traffic light statute, is a noncriminal traffic infraction, punishable pursuant to chapter 318 as a moving violation when the infraction results from the operation of a vehicle. Section 318.18(3)(a) provides for the specific penalties that may be imposed for all moving violations not requiring a mandatory appearance, which would include a red light violation.
When section 316.008(l)(w) is read in pari materia with sections 316.002, 316.007, 316.075, and 318.18, it is clear that the enforcement and punishment of red light violations are matters already covered by chapters 316 and 318, and therefore, specifically preempted by chapters 316 and 318. Thus, the City’s ordinance, section 48-26, is in violation of section 166.021(3)(c) which provides that municipalities may not legislate on any subject expressly preempted by state law.
THE CITY’S ORDINANCE CONFLICTS WITH STATE LAW
Contrary to the majority’s finding, the City’s red light violation ordinance is in direct conflict with article V, section 1 of the Florida Constitution, and chapters 316 and 318 of the Florida Statutes. Thus, pursuant to the clear mandate of section 316.002, which makes “[i]t unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter,” the ordinance is an invalid exercise of the City’s home rule and police powers.
As previously stated in this dissent, article V, section 20(d)(4) of the Florida Constitution abolished all of the municipal courts. Further, article V, section 1 vests the judicial power in this state in a supreme court, district courts, circuit courts, and county courts, and specifically provides that “[n]o other courts may be established by the state, any political subdivision or municipality,” and further provides that “[t]he legislature may establish by general law a civil traffic hearing officer system for the purpose of hearing civil traffic infractions.” Art. V; § 1, Fla. Const, (emphasis added). Despite article V’s clear language, the City’s red light violation ordinance provides for hearings before Special Masters appointed by the City to hear civil traffic infractions committed in violation of the City’s ordinance, section 48^46. § 48-26, Aventura Fla., City Code (“Notices of infractions issued pursuant to this article shall be addressed using the city’s own Special Masters ... and not through uniform traffic citations or county courts.... ”). These hearings are not conducted in a court of law established by the Florida Constitution, and findings of guilt are made by Special Masters, not judicial officers or hearing officers established by the Legislature. The City’s red light violation ordinance therefore conflicts with Florida’s Constitution.
The City’s red light violation ordinance also conflicts with state statutes. Section *245 316.007 states that “no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.” The following is a non-exclusive list of matters covered by chapters 316 and 318 which are covered by the City’s ordinance, not authorized by section 316.008, and which are in conflict with chapters 316 and 318:

Expressly Preempted By:

(1) Section 316.075 provides for specific punishment or penalties for traffic light infractions. Punishment for those who commit a traffic light infraction is, therefore, “a matter covered by this chapter” and thus expressly preempted by state law.
(2) Section 316.655 provides that all traffic infractions be punished under the provisions of chapter 318, and section 318.18 identifies the specific punishment for a red light infraction. Thus the penalties which may be imposed for a red light infraction is “a matter covered by this chapter” and expressly preempted by state law.
(3) Section 318.14(a) identifies the burden of proof that must be applied to the enforcement and punishment of all traffic infractions, including red light infractions. Thus, the legal standards in determining guilt for a red light infraction, is “a matter covered by this chapter” and therefore expressly preempted by state law.
(4) Chapter 318 also establishes the procedure that must be followed; the rights of the accused; and the qualifications of the individual hearing the matter. Thus, the procedure, rights, and qualifications are “matters covered by this chapter”
and therefore expressly preempted by state law.

In Conflict With:

(1) Whereas section 316.075 punishes drivers who commit traffic light infractions, the City’s ordinance punishes the owner of the vehicle which is -observed committing a red light traffic infraction unless the owner submits an affidavit stating that at the time the infraction was being committed, his/her vehicle was being driven without his/her consent. The affidavit must include the identity of the person who had care, custody or control of the vehicle, if known, or include a police report if the vehicle was stolen.
(2) Whereas section 316.640(5)(a) requires the traffic enforcement officer to personally observe the commission of the traffic infraction, the City’s ordinance only requires that a traffic enforcement officer review the recorded images taken by a camera installed by the City at the subject intersection.
(3) Whereas section 316.655 provides that all traffic infractions be punished under the provisions of chapter 318, and section 318.18 provides for a $60 fine for a red light infraction, the City’s ordinance imposes a fine of $125 for the first violation, $250 for a second violation, and $500 for each subsequent violation.
(4) Whereas a traffic infraction, including red light infractions must be proven beyond a reasonable doubt, see § 318.14(6), there is no such requirement under the City’s ordinance.
(5) Whereas the accused violator under Florida’s uniform traffic infraction system has the absolute right *246 to a judicial determination (as opposed to a hearing officer), see § 318.32(3) (providing that “[u]pon request of the defendant contained in a Notice of Appearance or a written plea, the case shall be assigned to a county court judge regularly assigned to hear traffic matters”), under the City’s ordinance, red light infractions are heard only by Special Masters appointed by the City.
(6) Whereas civil infraction hearing officers have been authorized by section 318.30, and they are authorized to accept pleas and determine guilt, see § 318.32, unless the accused requests that the matter be heard by a judge, the hearing officer must be a member in good standing of The Florida Bar, have completed a forty-hour training course approved by the Florida Supreme Court, and be subject to The Florida Bar Code of Professional Responsibility, the City’s ordinance only provides for the appointment of Special Masters, who are not required to meet any of the requirements under chapter 318.
Thus, contrary to the majority’s conclusion that “there is no provision in the Uniform Traffic Control Law that expressly preempts or conflicts with the Ordinance,” there are numerous examples of both express preemption and of conflicts between the City’s ordinance and Florida’s Uniform Traffic Control Law.
CONCLUSION
The City is essentially utilizing the state’s uniform traffic control devices (traffic lights), approved and regulated by the state for enforcement of the state’s uniform traffic control laws, to punish violators through the City’s own enforcement program and to pocket the revenues it collects for its own benefit. This is exactly the sort of inconsistent application of traffic laws and traffic penalties the people and legislature of this state sought to preclude by abolishing all of the municipal courts and enacting a uniform statewide traffic control system.
While the Legislature granted municipalities the authority to regulate, restrict, or monitor traffic within their jurisdictions, the Legislature did not expressly grant municipalities the authority to enforce the same traffic infractions identified and already regulated in chapter 316 through their own “system of justice.” If that were the case, there would be no uniformity-only confusion. I would, therefore, affirm the trial court’s order concluding that section 48-26 of the City’s Code is preempted by and in conflict with Florida law, and affirm the trial court’s order.